Pat CHOATE, Appellant,

v.

TRW, INC.

No. 92–7107.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1993.
Decided Feb. 4, 1994.

Dale A. Cooter, Cheverly, MD, argued the cause and filed the briefs for appellant.

Andrew M. Kramer, Cleveland, OH, argued the cause for the appellee. With him on the brief were Patrick F. McCartan, Cleveland, OH, Patricia A. Dunn, and Deena B. Jenab, Washington, DC.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Choate sued his former employer, appellee TRW, Inc., for alleged wrongful discharge, alleging claims based on breach of contract and promissory estoppel.[1] The District Court granted summary judgment on both claims. As the record revealed nothing sufficient to overcome the presumption of at-will employment and no foundation for a claim of promissory estoppel, we affirm.

## I. BACKGROUND

### A. *The Factual Record*

Taking the record evidence before the District Court in the light most favorable to the appellant, as we must do in the summary judgment context, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), the facts in this case are as follows. In March of 1981, Dr. Pat Choate, theretofore a career civil servant and then member of the Senior Executive Service with the Department of Commerce, accepted a position as a senior policy analyst with TRW. He remained in TRW's employ until his firing in 1990, during the interim advancing through two promotions to Vice President of the Office of Policy Analysis. From the beginning of his employment, appellant wrote and published books and articles on his own time. In 1988 he mentioned to Reuben Mettler, then Chief Executive Officer of TRW, that he might write a treatise on foreign (particularly Japanese) influence in the American political system to be entitled AGENTS OF INFLUENCE. Approximately one month after that conversation, Choate published an article in the *Washington Post* on the topic of foreign influence. That same month, he presented his thesis for the book in a speech before TRW's bi-annual senior management meeting.

In late 1989 and in 1990, pre-publication advertising for AGENTS OF INFLUENCE, frequently identifying Choate as a senior TRW officer, generated an increasingly high profile image of Choate as a "Japan-basher." TRW, which did extensive business with Japanese customers, concluded that Choate's continued employment was inimical to its business interests and terminated him.

We will discuss other facts as pertinent to our analysis of the applicable law *infra.*

---

1. Choate's complaint alleged a third count sounding in negligence. Choate briefed the claim on appeal, but the parties did not discuss it at oral argument. As the claim is in any event frivolous, we will affirm the District Court's grant of summary judgment as to it without further discussion. *See District of Columbia v. White,* 442 A.2d 159, 162 (D.C.App.1982) ("To allege negligence, the complaint cannot merely make conclusory allegations but must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability.") (internal quotation marks and citation omitted); *Chesapeake & Potomac Tele. Co. v. Dowdy,* 365 S.E.2d 751 (Va.1988) (employer owes no duty of care to employee independent of employment contract).

### B. *The Litigation*

Choate sued TRW in the Superior Court of the District of Columbia for $30 million. TRW removed the case to District Court on diversity grounds. After some discovery, including a deposition of Choate, TRW moved for summary judgment, contending that even if the version of the facts Choate described in his deposition was accepted as true, these did not establish the alleged employment contract, or the allegedly estopping promise of continued employment. Choate responded with an opposition and an affidavit contending that his employment contract allowed TRW to terminate him only if: (1) he failed to perform his job well; (2) he engaged in unethical or illegal conduct; or (3) TRW became bankrupt—none of which allowed TRW to terminate him because of his writings or their impact on the employer.

After additional briefing, the District Court entered summary judgment in favor of appellee on the whole action.

### II. ANALYSIS

■ TRW's success in the District Court, and ultimately in this Court, begins with the proposition that an employment relation of unspecified indefinite duration is presumptively employment "at will," terminable by either the employer or the employee with or without cause. *Littell v. Evening Star Newspaper,* 120 F.2d 36, 37 (D.C.Cir. 1941); *Sullivan v. Snap–On Tools,* 708 F.Supp. 750, 751 (E.D.Va.1989), *aff'd mem.,* 896 F.2d 547 (4th Cir.1990). We note, as did the District Court, that although the parties seem to have treated the employment relationship as being governed by the law of the District of Columbia, it is not at all certain that the law of Virginia does not control, as that is the actual location of TRW's offices. In any event, as both Virginia and the District of Columbia are "at will" jurisdictions, it is not essential that we make that choice of law.[2]

■ In an at will jurisdiction, a plaintiff, such as Choate, suing for breach of employment contract must rebut the presumption that the employment is "at will." In order to rebut the presumption, the employee must present evidence of a "clearly expressed" contractual intent on the part of both the employer and the employee. *Minihan v. American Pharmaceutical Ass'n,* 812 F.2d 726, 727 (D.C.Cir.1987); *Sullivan v. Heritage Foundation,* 399 A.2d 856, 860 (D.C.App. 1979).[2] In the present case, not only has Choate failed to establish such a clearly expressed contractual intent, but the record evidence at summary judgment was wholly inconsistent with Choate's proposition and supportive of the presumption.

For example, to confirm an earlier oral offer of employment to Choate, TRW sent a letter offer setting forth terms of salary, benefits, incentive pay, stock options and savings plans, but not specifying any term of length for employment. Instead, the letter merely recited the parties' understanding that the employment contemplated was on a "long term basis," clearly consistent with the underlying principle of at-will employment that the employment relationship was of unspecified indefinite duration.

Moreover, within a few months of beginning work for TRW, Choate signed an Employee Confidential Information Agreement that designated TRW as the "employer" during "such time as may be mutually agreeable to the employer and [the employee]." Choate also received a copy of the company's Policy Manual, which stated that "TRW, of course, reserves the right, to the extent permitted by applicable law, to terminate any employee at any time."

Appellant asserts that he has presented evidence to counter the presumption. He reminds us, rightly, that his burden at the summary judgment stage was met if he but established that there was a genuine issue of

---

2. In Virginia, the rule may be slightly different. "Virginia adheres to the common law rule that when the intended duration of a contract for the rendition of services cannot be determined by *fair inference* from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party a reasonable notice." *Miller v. SEVAMP, Inc.,* 234 Va. 462, 362 S.E.2d 915, 917 (1987) (emphasis added). The difference is immaterial. As there is nothing in the record before us that gives rise to a fair inference of the intended duration, the District Court correctly held that the at will presumption prevailed unrebutted.

material fact. Fed.R.Civ.P. 56(c). We make this determination *de novo,* as the record before us is the same as that before the district judge and the question is one of law. *Petersen v. Dole,* 956 F.2d 1219, 1221 (D.C.Cir.1992); *Parmac, Inc. v. IAM Nat. Pension Fund Ben. Plan,* 872 F.2d 1069, 1071 (D.C.Cir.1989). We must determine first whether the moving party discharged its duty by "informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). We must then determine whether the nonmoving party successfully established that there is such a genuine issue. *Id.; Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1032 (D.C.Cir.1988).

Where, as here, "the nonmoving party shoulders the burden of proof at trial, the movant's burden is met by a sufficient showing . . . that there is an absence of evidence to support the nonmoving party's case." *Frito–Lay,* 863 F.2d at 1032 (alteration in original) (internal quotation and citations omitted). Here the movant, TRW, relies principally on a lack of evidence of the "clearly expressed" contractual intent that is required to defeat the at will presumption. *Minihan,* 812 F.2d at 727; *Miller,* 362 S.E.2d at 917; *Sullivan,* 399 A.2d at 860. Appellant responds that he has presented the evidence to create a genuine issue as to this material fact: He has testified that he understood the employment to be non-terminable because TRW referred to the employment as being "long term" and that he left secure government employment to accept the position. While each of these assertions may be disputed, and therefore create a genuine issue, none of them are material, for none of them affects the outcome of the litigation. The best that Choate has done by this showing is put himself in company with the plaintiff-appellant in *Minihan.* There we described as "well-settled" the law that "in the absence of clearly expressed contrary intent," the presumption of at will employment

prevails "even though the parties speak in terms of 'permanent' employment" and that the legal assumption is that by using that term "the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party." 812 F.2d at 727 (internal brackets and quotation marks omitted) (citing *Sullivan v. Heritage Foundation,* 399 A.2d 856, 860 (D.C.App.1979)). In short, the District Court did not err in granting summary judgment on the breach of contract claim.

Neither did the District Court err in granting summary judgment in favor of TRW on the promissory estoppel claim. We will assume for the sake of argument that the relevant jurisdiction, whether the District of Columbia or Virginia, would recognize promissory estoppel claims on appropriate facts. Where recognized, the promissory estoppel doctrine is that a promise that the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and that does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Granfield v. Catholic University of America,* 530 F.2d 1035, 1042 (D.C.Cir.1976) (citing RESTATEMENT OF CONTRACTS, § 90).

TRW asserts that it has made its necessary showing that there is no genuine issue of material fact, in that the nonmovant cannot support an essential element of his claim. *Frito–Lay,* 863 F.2d at 1032. Specifically, TRW asserts that the record provides no support for the existence of an estopping promise in the first instance, let alone the reasonable expectation and actual inducement required even to reach the injustice question. We agree.

Choate asserts that the CEO of appellee, knowing the nature of the book, told him, "The topic sounds wonderful, and I have no problems with it." Choate asserts that this is the promise on which he relied. But a promise is "an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely there-

on." 1 CORBIN ON CONTRACTS § 13 (1963). Even taking the evidence in the light most favorable to appellant, Dr. Mettler's statement does not meet that description. As the claim of an estopping promise could not "reasonably be resolved in favor of" Choate, *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511, summary judgment was warranted.

### III. CONCLUSION

For the reasons set forth above, we conclude that the District Court properly granted summary judgment as to all claims. The judgment of the District Court is

*Affirmed.*